UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                         Criminal No. 21-602 WJ

GREGORY WALIGORSKI,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

**THIS MATTER** comes before the Court upon Defendant's Motion to Suppress Evidence and Statements (Doc. 15), filed October 25, 2021. Having reviewed the parties' pleadings and the applicable law, and after considering the testimony and exhibits at the April 6, 2022 suppression hearing, this Court **DENIES** the motion.

## BACKGROUND

In the summer and fall of 2020, the Drug Enforcement Administration ("DEA") investigated a Mexico-based drug trafficking organization (the "DTO") that was suspected of supplying large quantities of methamphetamine and fentanyl to various cities in the United States including Albuquerque, New Mexico. The DEA believed the Mexican suppliers were part of the Rascon family. The DEA had monitored communications between who it believed to be Hernan Rascon-Salais ("Rascon") and an individual in the United States who allegedly received methamphetamine from Rascon. It had also apprehended one of Rascon's couriers on a date Rascon had stated he would be sending methamphetamine to New Mexico.

1

On October 16, 2020, an undercover DEA agent ("UC") communicated with Rascon via text message. Rascon stated he would send a driver from Mexico to Albuquerque on October 17, 2020 with between 90 to 100 pounds of methamphetamine, which he later confirmed was 88 pounds. He relayed that it would be hidden in the gas tank of the black Ford F-150. He stated that the truck would be left in the parking lot of the Holiday Inn & Suites at the airport. He instructed the UC to pick up the truck and drive it to another location to extract the methamphetamine. He told the UC that the keys would be left inside the truck for him.

DEA agents arrived at the Holiday Inn & Suites on October 17 and observed only one black Ford F-150, though a Black Dodge Ram also entered the parking lot while the agents were there. The agents communicated with intelligence specialist Reid Reichle who informed them that based on information gleaned from law enforcement and commercial databases, the Ford F-150 in the parking lot had crossed the border into Mexico earlier that morning and then re-entered the United States that afternoon. He informed the agents that the F-150 was registered to Jessica Mae Fertig, who was also known as Jessica Mae Waligorski according to a database search. He stated that the address listed on her Texas driver's license was the same address listed for a phone number registered to her spouse, Defendant Gregory Waligorski, who had been previously identified as a person of interest in the investigation. DEA agents knew that phone number had contacted a phone number of another member of the Rascon DTO 166 times between August 8 and September 15.

The agents then approached the F-150 and found it was unlocked. They located the keys under the driver's side floor mat. They drove the truck away from the hotel and looked inside the gas tank. One agent attempted to insert a live feed video scope into the gas tank, but there was a cap that prevented its entry. Several agents lifted the front driver's side corner of the bed of the

truck so that they could access the tank. Another agent then disconnected the line connecting the gas tank to the gas cap area, which allowed the live feed video scope to be inserted. They found bundles of suspected methamphetamine inside the gas tank, later determined to be 88 pounds of methamphetamine.

Defendant was arrested and charged with Possession with Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Methamphetamine. He filed the instant Motion, alleging the warrantless search of his truck violated the Fourth Amendment.

## DISCUSSION

I.   *Whether Defendant Lacks Standing to Challenge the Search of the Truck*

The Government contends that Defendant lacks standing to challenge the search of truck because he left it in a parking lot unlocked with the keys accessible, thereby relinquishing any expectation of privacy. Standing depends upon two factors: 1) whether the defendant's conduct demonstrated a subjective expectation of privacy; and 2) whether society is prepared to recognize that expectation as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

In order to show a subjective expectation of privacy, the Tenth Circuit has considered the following non-exhaustive list of factors: 1) whether the defendant asserted ownership over the items seized from the vehicle; 2) whether the defendant testified to his expectation of privacy at the suppression hearing; and 3) whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle. *United States v. Allen*, 235 F.3d 482, 489 (10th Cir. 2000). At the suppression hearing held on April 6, 2022, the Defendant testified that his wife had purchased the F-150 prior to their marriage, but that he regularly used it and contributed funds for the maintenance and insurance of the truck. He stated that on the day of the incident in question, he parked the truck in the hotel parking lot, turned off

the ignition, and left the keys under the floor mat. He stated when he left the truck, it was unlocked, but that the windows were rolled up and his personal items remained in the truck such as a stroller, car seats, and a media center. He testified that he expected to return to the truck in the morning and that he did not expect a random passerby to access his truck. However, he did expect "one particular person" to access the truck and later return it to him. He explained that he was not aware of the specific identity of this particular person, only that some individual would be accessing the truck.

     As it pertains to factors 1 and 3 (whether the defendant asserted ownership over the items seized from the vehicle, and whether the defendant presented any testimony at the suppression hearing that he had a legitimate possessory interest in the vehicle), the Court finds that the Defendant had an ownership and legitimate possessory interest in the vehicle. His wife purchased the truck, however Defendant regularly drove it and contributed funds to the maintenance and insurance of the vehicle, rendering it community property. However, as to factor 2 (whether the defendant testified to his expectation of privacy at the suppression hearing), the Court finds that Defendant did not have a subjective expectation of privacy in the vehicle. He testified that he expected an individual of whose identity he was unaware—essentially a stranger—to access his vehicle in the parking lot. Such action does not demonstrate that Defendant "sought to preserve something as private." *Bond v. United States*, 529 U.S. 334, 338 (2000).

     Even if Defendant did maintain a subjective expectation of privacy, he still failed to show that his expectation was objectively reasonable. Defendant's argument hinges on the idea that he did not abandon his truck by leaving it unlocked in a hotel parking lot where he was an overnight guest. Courts that have addressed abandonment of unlocked cars have relied on factors absent in

this case, such as whether the car was left running with the keys in the ignition, whether the defendant was fleeing law enforcement when he left the car, whether the car was parked illegally, and whether any of the doors were left open.[1] However, the case at bar turns not so much on whether the car was abandoned, but on whether Defendant assumed the risk that the individual to whom he entrusted his truck would allow law enforcement to access its contents. In *United States v. Austin*, the Tenth Circuit examined whether the defendant had a reasonable expectation of privacy in a bag he left with a stranger in an airport. 66 F.3d 1115 (10th Cir. 1995). It concluded that he had relinquished control and authority to exclude others access to the bag, and therefore assumed the risk that the stranger would allow law enforcement access to it. *Id*. at 1119; *see also United States v. Jacobsen*, 466 U.S. 109, 117 (1984) ("It is well settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information."). It was of no legal consequence that the defendant "did not intend" for the stranger to turn over care of the bag to law enforcement. *Id*. What mattered was that by leaving his property with another, the defendant gave that other person "the ability to do so." *Id*.

Similarly, Defendant Waligorski willingly provided access of his truck to another individual, who—unfortunately for Defendant—happened to be an undercover agent. He assumed the risk that the person with whom the Rascon member had been texting was an undercover agent and would provide access of the vehicle to law enforcement. Defendant chose

---

[1] *See, e.g., U.S. v. Barlow*, 17 F.3d 85, 88 (5th Cir. 1994) (concluding that a police officer who discovered an unlocked car left at the end of a public street with the key in the ignition could reasonably conclude that the car had been abandoned). *U.S. v. Tate*, 821 F.2d 1328, 1330 (8th Cir. 1987) (concluding that when a defendant fled the scene and left the car unoccupied and unlocked, he abandoned his expectation of privacy in the van); *U.S. v. Magana*, 2007 U.S. Dist. LEXIS 119064, at *8-9 (D. Nev. Jan. 18, 2007) ("[I]f the car was legally parked next to the curb as the defendant argues, the defendant might have a legitimate expectation of privacy in his vehicle and it might not be deemed abandoned.").

to accept the instructions given to him and allow his truck to be left at the Holiday Inn for some other individual to access. As the Government points out, in *Austin*, the Defendant did not even intend for the stranger to search his bag, whereas in the present case, Defendant actually hoped the supposed drug trafficker would do just that—he intended for the individual to pick up his truck, find the keys under the floor mat, and access the vehicle. As such, Defendant clearly surrendered any reasonable expectation of privacy of the truck. Defendant counters that in this case, unlike in *Austin*, the property was not entrusted to a stranger. However, merely because Defendant assumed that the individual with whom Rascon had been texting was someone affiliated with a drug trafficking group—and was sorely mistaken—does not mean that this individual was anything more than a stranger to him. Finally, Defendant argues that "although there is a risk that anyone could enter an unlocked car that had keys inside, it would be unlawful to do so." However, he points to no case law indicating that it is reasonable to maintain an expectation of privacy and not anticipate criminal acts when leaving property unlocked. Indeed, a reasonable person would expect at least some risk of auto theft of an unlocked vehicle in a public parking lot at night.

      Therefore, the Court finds that Defendant did not possess an objectively reasonable expectation of privacy in his truck. As such, Defendant does not have standing to challenge the search of his truck.

      II.    *Whether Law Enforcement had Probable Cause to Search the Truck*

      Even if Defendant possessed standing to challenge the search of the truck, the search was still proper because it was supported by probable cause. Searches conducted without a warrant are per se unreasonable, subject to a few exceptions. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). One such exception is searching a vehicle based on probable cause. *California v. Carney*, 471

U.S. 386, 392-393 (1985). The Court first addresses whether a search occurred on Defendant's truck and then assesses whether any search was conducted with probable cause.

A Fourth Amendment search occurs when the government trespasses on a person's property in an attempt to find something or obtain information. *United States v. Jones*, 132 S. Ct. 945, 947 (2012). A trespass occurs when the Government physically intrudes onto an "effect," including automobiles. *Florida v. Jardines*, 569 U.S. 1, 5 (2013); *Jones*, 132 S. Ct. at 945, 951 n.5. Traditionally, the exterior of a car is "thrust into the public eye," and visually examining it does not constitute a search. *Jones*, 132 S. Ct. at 952. Encroaching onto the vehicle, however, such as attaching a GPS monitoring device to it, constitutes a search. *Id*. In the instant case, the DEA agents physically invaded the truck by entering the vehicle, driving it to another location, and manipulating its components to insert a live feed video into the gas tank. Thus, a search occurred.

The next question is whether the search was supported by probable cause. Probable cause exists "when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed" and that the person or property was involved in the crime. *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007). The threshold inquiry is whether there was a "substantial probability" rather than a "bare suspicion" that the person or property was involved in the crime. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). When an informant's tip forms the basis for probable cause, the Court must make a "determination based on the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge." *United States v. Hendrix*, 664 F.3d 1334, 1338 (10th Cir. 2011). "An informant's tip which provides 'highly specific or personal

details from which one could reasonably infer that the informant had firsthand knowledge about the claimed criminal activity' is more likely to be found sufficient to support probable cause." *Id*. at 1338 (quoting *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009)). "Further, an informant's tip is more reliable if it is confirmed by an officers' independent observations." *Id*. at 1338.

Defendant points out that at the time the DEA agents observed the F-150 in the hotel parking lot, they did not know how long the truck had been parked there or the license plate number of the truck identified in the text messages. Defendant states that they did not conduct surveillance on the truck prior to its arrival in the parking lot nor were they aware of who drove the truck to that location. Additionally, Defendant argues that the information contained in the text messages sent to the UC was not specific or detailed, and was not corroborated—that is, there was no way of testing the informant's veracity, reliability or basis of knowledge. However, prior to arriving at the Holiday Inn & Suites, the agents knew the color and make of the target vehicle, and the location and specific date it would be arriving. Had there been multiple vehicles matching the make and model of the target vehicle upon arrival on October 17, the analysis might be different. But the fact remains that there was only one vehicle that matched that description: a black Ford F-150 parked in the lot of the Holiday Inn at the time and date in question.

Moreover, before searching the F-150, the agents undertook further steps to confirm that it was the target vehicle described in the text messages. In the parking lot, they spoke with Intelligence Specialist Reichle who relayed that the black F-150 pick-up truck parked in the hotel parking lot had crossed the border into Mexico earlier that morning and then re-entered the United States, passed through a checkpoint in Las Cruces, and arrived in Albuquerque. The truck

8

passed through the Las Cruces checkpoint at 4:23, and Rascon texted the UC at 4:37 indicating that everything was "fine" and the truck would be in Albuquerque in 2-3 hours. They confirmed that it was registered to Jessica Mae Fertig, who shared an address with Defendant, who had contacted a member of the Rascon DTO 166 times in the weeks prior. These facts corroborated the DEA's knowledge that a truck would be arriving in a specific parking lot on a certain date with 88 pounds of methamphetamine in the gas tank. Therefore, they entered the truck, drove it to another location, and searched the gas tank where they indeed located the 88 pounds of meth. Thus, the Court finds the agents acted on highly specific details in the text messages which they corroborated with their own observations in the hotel parking lot and confirmed with Intelligence Specialist Reichle. Those facts "would warrant a man of reasonable caution to believe that evidence of a crime [would] be found at the place to be searched." *United States v. Artez*, 389 F.3d 1106, 1113 (10th Cir. 2004). Thus, the Court finds the Government acted on probable cause when it conducted a search of the vehicle.

      III.     *Whether the Search of the Truck was Reasonable*

Defendant argues that even if the search was supported by probable cause, it was unreasonable. He provides no legal authority for the proposition that an unreasonable search supported by probable cause is improper. In fact, he points to no proposition that there can exist a search supported by probable cause that is somehow unreasonable. In fact, it is quite the contrary—if a search is supported by probable cause, it is reasonable. *United States v. Ross*, 456 U.S. 798, 809 ("A search is not unreasonable if based on facts that would justify the issuance of a warrant . . ."); *United States v. Ludwig*, 10 F.3d 1523, 1528 (10th Cir. 1993) ("A warrantless search of an automobile is reasonable if there is probable cause to believe it contains contraband."); *United States v. Morales*, 489 F. Supp. 2d 1250, 1264 (D.N.M. 2007) (same). Defendant attempts to rely

on *California v. Carney*, 471 U.S. 386, 394 (1985), which provides, "The question remains whether, apart from the lack of a warrant, this search was unreasonable. Under the search warrant requirement, only the prior approval of the magistrate is waived; the search otherwise [must be such] as the magistrate could authorize." Defendant misreads this case. It confirms that if a magistrate could authorize search—i.e. by determining probable cause exists—then the search is reasonable. Therefore, the Court rejects Defendant's argument.

Regardless, even if Defendant's argument was merited, the search of the F-150 was reasonable. The agents acted on specific details gleaned from text messages regarding the color and make of the car, where it was arriving from and where it would be parked, and where the methamphetamine would be stored. They corroborated those details by their own observations and information provided by an intelligence specialist, rendering the search reasonable.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant has not met his burden to justify suppression of evidence found in his vehicle.

**IT IS THEREFORE SO ORDERED** that Defendant's Motion to Suppress Evidence (Doc. 15) is hereby **DENIED**.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE